Filed 1/24/24  P. v. Segura CA2/3

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>GUILLERMO ISLAS SEGURA,<br><br>Defendant and Appellant. | B317636<br><br>Los Angeles County<br>Super. Ct. No. VA153120-03 |

APPEAL from a judgment of the Superior Court of Los Angeles County, Lee W. Tsao, Judge.  Sentence vacated; remanded with instructions.

Larenda R. Delaini, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Idan Ivri and Theresa A. Patterson, Deputy Attorneys General, for Plaintiff and Respondent.

The People filed an information charging Guillermo Islas Segura with the robbery of two victims and assault with a firearm. The information also alleged various firearm enhancements and a prior strike. Months before trial, and a week after newly-elected District Attorney George Gascón took office, the prosecutor moved to dismiss the firearm and strike prior allegations based on Gascón's "Special Directive 20-08." The court denied the motion. The case went to trial, and the jury convicted Islas Segura as charged and found true the enhancement allegations.

On appeal, relying on *Nazir v. Superior Court* (2022) 79 Cal.App.5th 478 (*Nazir*), decided by our colleagues in Division Seven, Islas Segura argues the court erroneously believed it could not rely on the district attorney's special directive to grant the People's motion to dismiss.[1] He also argues the prosecutor committed misconduct by referring to a Christmas snow globe during closing argument. We reject Islas Segura's misconduct argument, but we agree with him that *Nazir* counsels us to remand this case for further proceedings. Accordingly, we vacate the sentence and remand the case for the trial court to reconsider the People's motion to dismiss. We affirm in all other respects.

## FACTS AND PROCEDURAL BACKGROUND

### 1. *Islas Segura and two cohorts rob two victims*

On March 26, 2020, Michael Moreno and Mario Vargas were eating pizza outside a restaurant when a blue Honda Pilot drove up. The driver, George Penalba, pointed a revolver at

---

[1] *Nazir* was decided nearly 18 months after the trial court in this case denied the prosecutor's request to dismiss the firearm and prior strike allegations.

Moreno and Vargas. Islas Segura and another man, Brandon Peete, got out of the car. One of the men hit Vargas in the head with a gun. The other man indicated he had a gun under his sweater and pressed it against Moreno's body. Islas Segura and Peete took the victims' phones and wallets, and then drove away in the Pilot. The police found the Pilot and detained Islas Segura later that night. In the car, the police discovered a magazine loaded with 15 bullets for a semiautomatic firearm.

The People charged Islas Segura, Penalba, and Peete with two counts of second-degree robbery (Pen. Code, § 211)[2]. The People also charged Islas Segura with assault on Vargas with a firearm (§ 245, subd. (a)(2)). The People alleged he used a firearm during the offenses within the meaning of sections 12022.53, subdivision (b) and 12022.5, subdivision (a). The information also alleged Islas Segura had suffered a prior first degree burglary conviction (§ 459), which qualified as both a five-year prior and a strike for purposes of the Three Strikes law.

## 2. *Pretrial motions after the newly-elected district attorney issued his "Special Directive 20-08"*

On December 14, 2020, Islas Segura appeared before the court with his attorney. Counsel for Penalba and Peete also appeared on behalf of their clients, who were not in court. Deputy District Attorney Nicholas Liddi appeared on behalf of the People.

Newly-elected District Attorney George Gascón had issued his "Special Directive 20-08" one week earlier, on December 7, 2020, his first day in office. (See *Association of Deputy District*

---

[2] References to statutes are to the Penal Code.

*Attorneys v. Gascón* (2022) 79 Cal.App.5th 503, 515–516, review granted Aug. 31, 2022, S275478.)  Gascón's special directive made significant changes to his office's Legal Policy Manual. (See *Nazir*, *supra*, 79 Cal.App.5th at p. 486.)  The directive stated the District Attorney's office would not file sentencing enhancement allegations in new cases, and it instructed deputy district attorneys to move to dismiss or withdraw enhancement allegations in pending cases.  (*Ibid*.)

As justification for this new policy, the directive stated that " 'the current statutory ranges for criminal offenses alone, without enhancements, are sufficient to both hold people accountable and also to protect public safety' and that 'studies show that each additional sentence year causes a 4 to 7 percent increase in recidivism that eventually outweighs the incapacitation benefit.'  An appendix to Special Directive 20-08 stated that there was no compelling evidence California's 100-plus sentence enhancements improved public safety, that such enhancements contributed to prison overcrowding, and that they 'exacerbate[d] racial disparities in the justice system.'  The appendix also stated 'long sentences do little' to deter crime." (*Nazir*, *supra*, 79 Cal.App.5th at p. 486.)

Penalba's counsel told the court, "I'd like to make a motion to strike all allegations on behalf of Mr. Penalba." Peete's attorney stated, "To the extent that there are any special allegations or enhancements that relate to Mr. Peete, I request the deputy district attorney to abide by the directive of District Attorney Gascón, making a motion to dismiss any special allegations and enhancements."  The court inquired of Islas Segura's counsel.  He replied he believed the strike prior alleged against Islas Segura was "an enhancement under 1170.12(b)

that's contemplated by the new district attorney's office directive," adding, "I'd ask that it be stricken, both as a strike prior, and as a five-year prior."[3]  Islas Segura's counsel did not ask the court to strike or dismiss any of the three firearm enhancements alleged against his client.

Liddi then stated, "[A]t the direction of the District Attorney, George Gascón, the People join in the defendants' motions to strike all alleged sentence enhancements . . . and move to dismiss all allegations, alleged sentence enhancements named in the information for all counts and all defendants."

This exchange ensued:

> "THE COURT:  Okay.  So is this request based only on the special directive, Mr. Liddi?
>
> "MR. LIDDI:  That is correct.
>
> "THE COURT:  Under 1385?
>
> "MR. LIDDI:  Yes.
>
> "THE COURT:  All right.  Thank you. . . .  Well, it's well-settled that the court's discretion to dismiss under 1385 must be based on an individualized consideration of the circumstances of the offense and the defendant's background, and that the court's

---

[3]     The Three Strikes law is an alternative sentencing scheme, not an enhancement.  (*People v. Burke* (2023) 89 Cal.App.5th 237, 242–244.)  The next day, December 15, 2020, "the district attorney issued a clarification" of the special directive that it applied to all allegations of "prior serious or violent felony convictions under the three strikes law" as well.  (*Nazir, supra,* 79 Cal.App.5th at pp. 486–487.)

exercise of discretion cannot be based on disagreement with the law or antipathy with the sentencing scheme, so for those reasons, the court would be inclined to deny the request to dismiss."

The court continued, "Of course, should any counsel wish to renew the motion based upon the factors that are traditionally submitted to the court for dismissal under 1385, I would welcome—I'd be happy to consider it." Peete's counsel noted the prosecutor had failed to "articulate[ ]" the "language [in the special directive] that bears on the subject of good cause as to why the court should grant the motion to dismiss allegations and enhancements." The court responded it would "incorporate" the special directive "into the record," but noted it did "not provide any facts or circumstances specific to this case."

### 3. *The trial, verdict, and sentence*

The People tried Islas Segura separately from his co-defendants in August 2021. The trial ended in a mistrial after the court excused several jurors for medical reasons.

The People tried the case to a second jury in November 2021. Both victims testified at the second trial, and they generally agreed on the facts summarized above. However, they disagreed about Islas Segura's specific role in the robberies. According to Moreno, Islas Segura pressed a gun against his body and robbed him, and Peete struck Vargas in the head with a gun. According to Vargas, Islas Segura struck him in the head with a gun, and Peete robbed Moreno. As the Attorney General notes, because the jury convicted Islas Segura of assault with a firearm on Vargas, it must have believed Vargas's testimony that it was

6

Islas Segura, rather than Peete, who hit him in the left temple with a gun.

The jury convicted Islas Segura as charged and found true the firearm allegations. In a bench trial, the court found true the prior conviction allegations.

At no time before, during, or after the first or second trials did either the prosecutor or Islas Segura's counsel make any further motion or request to dismiss his prior strike, or to strike or dismiss any of the firearm enhancements.

The parties appeared for sentencing on January 14, 2022. The prosecutor asked the court to sentence Islas Segura to 18 years, consisting of the midterm of three years on count 1 (robbery of Moreno), doubled because of the strike, plus one-third the midterm on count 2 (robbery of Vargas), doubled, to be served consecutively to count 1, plus 10 years for the firearm enhancement (§ 12022.53, subd. (b)). The prosecutor did not ask the court to strike or dismiss any of the enhancements.

Nor did defense counsel ask the court to strike or dismiss any enhancements.[4] Counsel asked the court to sentence

---

[4] Defense counsel apparently never made a *Romero* motion to dismiss Islas Segura's strike prior. (See *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497.) As for the firearm enhancements, when the prosecutor made his oral motion in December 2020, section 1385, subdivision (a) provided, "The judge or magistrate may, either of his or her own motion or upon the application of the prosecuting attorney, and in furtherance of justice, order an action to be dismissed." (Former § 1385, subd. (a).) As a leading treatise has noted, "Section 1385 on its face authorizes only the court or the prosecution to bring a motion to dismiss a pleading." (Couzens et al., Sentencing California Crimes (The Rutter Group 2023) § 20:52.) The treatise

Islas Segura to 16 years, consisting of the midterm on count 2, doubled because of the strike, plus 10 years for the firearm enhancement.  Counsel asked the court to run the sentence on count 1 concurrently with the sentence on count 2.

The court accepted defense counsel's proposed sentence. The court also, on its own motion, struck the firearm enhancement on count 1.  Neither the prosecutor nor defense counsel addressed count 3, assault with a firearm on Vargas. The court did not impose sentence on that count, stating only, "The sentence, in connection with count 3, Penal Code section 245(a)(2), and the gun allegation, under Penal Code section 12022.5, is stayed pursuant to Penal Code section 654."

---

continues, however, to cite cases holding a defendant has a right to invite the court to exercise its power by an application to strike a count or allegation of an accusatory pleading, and the court must consider evidence offered by the defendant in support of his assertion that the dismissal would be in the furtherance of justice.  (*Ibid*. [citing cases including *Rockwell v. Superior Court* (1976) 18 Cal.3d 420, 441].)  By the time of Islas Segura's sentencing in January 2022, the Legislature had added subdivision (c) and its many subparts to section 1385, imposing on courts the duty to "dismiss an enhancement if it is in the furtherance of justice," unless any initiative statute prohibited such a dismissal.  (§ 1385, subd. (c)(1).)  Moreover, as of January 1, 2018, section 12022.53, subdivision (h) gave courts authority, in the interest of justice under section 1385, to strike or dismiss a firearm enhancement.  (§ 12022.53, subd. (h).)

## DISCUSSION

1. *Under* **Nazir v. Superior Court***, remand is appropriate in this case*

    a.     *We exercise our discretion to consider the merits*

We first address the Attorney General's contention that Islas Segura forfeited the issue. The Attorney General acknowledges the prosecutor expressly moved (orally) to dismiss the strike prior and firearm allegations against Islas Segura. Nevertheless, he argues Islas Segura is barred from challenging the court's denial of that motion because he did not explicitly join in the prosecutor's request to dismiss the firearm allegations; instead, he requested only that the court dismiss the prior conviction allegations.

The Attorney General seems to misunderstand the nature of Islas Segura's appeal. As we understand it, Islas Segura does not challenge the court's denial of his informal request for dismissal of the prior conviction allegations. Instead, he challenges the court's denial of the prosecutor's motion to dismiss all the allegations against him. Although Islas Segura had the right to invite the court to exercise its power to strike or dismiss the allegations (*Rockwell v. Superior Court*, *supra*, 18 Cal.3d at p. 441), he had no authority to join in the prosecutor's motion[5]

---

[5] The Attorney General does not contest Islas Segura's standing to challenge the denial of the prosecutor's motion, so we need not consider that issue. In any event, it appears Islas Segura does have standing. (See *Nazir, supra,* 79 Cal.App.5th at p. 489, fn. 3 ["We summarily denied the petition because we concluded [the defendant], who was seeking writ review of the trial court's order denying the People's [1385] motion (i.e., not his motion), lacked standing. The Supreme Court apparently thought otherwise."].)

9

(see *People v. Carmony* (2004) 33 Cal.4th 367, 375 ["A defendant has no right to make a motion, and the trial court has no obligation to make a ruling, under section 1385."]).

Alternatively, the Attorney General contends the prosecutor's December 2020 motion was not sufficient to preserve the issue given the court later declared a mistrial. According to the Attorney General, once the court declared a mistrial, its prior rulings no longer had effect. Therefore, he asserts, Islas Segura and the prosecutor had to make new requests for dismissal— either at the second trial or sentencing—to preserve the issue for appeal.

The Attorney General provides no authority explicitly holding a declaration of mistrial vacates a court's prior rulings under section 1385. In any event, to foreclose any issue about ineffective assistance of counsel, we exercise our discretion to consider the merits of Islas Segura's claim.

b.    *The* Nazir *decision*

A felony complaint charged Rehan Nazir with various crimes, including kidnapping, and included firearm allegations. On December 11, 2020, three days after Gascón issued his special directive, the prosecutor made an oral motion to dismiss the firearm enhancements. The court—the same judge who denied the prosecutor's motion in this case (the Honorable Lee W. Tsao) —denied the motion, stating it was " 'based solely on District Attorney Gascón's Special Directive.' " (*Nazir, supra,* 79 Cal.App.5th at pp. 486–487.) "The court said the cases 'are clear that the exercise of discretion under [section] 1385 must be based on an individualized consideration of the offense and the offender

10

and not on any antipathy or disagreement with the statutory scheme.' " (*Id*. at pp. 487–488.)[6]

A week later the prosecutor filed a written motion under section 1385 to dismiss the firearm enhancements, "restating verbatim the arguments recited in" an addendum to the special directive. "At the hearing, the prosecutor did not present any argument in support of the motions, other than parroting the language" of the special directive. Nazir's counsel argued the court had erred in denying the People's previous motion. (*Nazir*, *supra*, 79 Cal.App.5th at p. 488.)

The court again denied the prosecutor's motion. Again, the court stated the " 'exclusive basis' " for the motion was the Special Directive. To grant the motion, the court said, it " 'would have to adopt [the district attorney's] rationale,' " which was " 'not a permissible basis' " on which to grant the motion. The court considered the information, the preliminary hearing transcript, the probation report, the nature of the offense, and Nazir's background and character, concluding the motion to dismiss the enhancements was not in the interest of justice. (*Nazir*, *supra*, 79 Cal.App.5th at p. 488.)

---

[6] See generally Couzens et al., Sentencing California Crimes, *supra*, § 12:11 ["In determining whether striking an enhancement is in the furtherance of justice, the court . . . should make its decision after *an individualized consideration*" of factors such as the nature and circumstances of the crime and the defendant's level of involvement, the defendant's background and prospects, the constitutional rights of the defendant and the interests of society represented by the People, and other factors that "would motivate a 'reasonable judge' in the exercise of discretion."]. See also Cal. Rules of Court, rules 4.410, 4.411.5, 4.421, 4.423, 4.428.

Nazir filed a petition for writ of mandate or prohibition. (*Nazir, supra*, 79 Cal.App.5th at p. 489.)  The Attorney General filed a brief as amicus curiae on behalf of Nazir and District Attorney Gascón.  (*Id.* at p. 484.)[7]  The Attorney General stated "a policy like S[pecial] D[irective] 20-08 is a proper basis for seeking dismissal."  The Attorney General noted "it is the elected district attorney, not the court, that determines how best to represent society's interest in prosecuting criminal offenses," and "[t]he policy judgments expressed in S[pecial] D[irective] 20-08 represent the People's determination regarding 'the interests of society' for purposes of section 1385."

The Attorney General stated, "It is *the court* [not the prosecutor] that is required to make an individualized assessment of the case, weighing that factual assessment along with other relevant considerations."  "When the prosecution elects to request dismissal of charges, as here," the Attorney General noted, "the interests of the defendant and the People are aligned."  According to the Attorney General, "the parties' agreement alone may strongly suggest that dismissal would be in furtherance of justice."

The Court of Appeal concluded, "The trial court misunderstood the scope of its discretion when it refused to consider Special Directive 20-08 in determining whether to grant the motion to dismiss the firearm enhancements alleged against Nazir."  (*Nazir, supra*, 79 Cal.App.5th at p. 497.)  However, the appellate court rejected Gascón's contention that a trial court has no authority to deny a prosecutor's motion to

---

[7]     On our own motion, we take judicial notice of the Attorney General's amicus brief in *Nazir*.  (Evid. Code, § 452, subd. (d)(1).)

dismiss an enhancement under section 1385. (*Nazir*, at p. 499.) The court reiterated that, in determining whether dismissal of an enhancement furthers the interest of justice, a court "must consider case-specific factors as well as general sentencing objectives." (*Id.* at p. 485.) The court remanded the matter, directing the trial court to "consider Special Directive 20-08 in determining whether to dismiss the firearm allegations against Nazir." (*Id.* at p. 501.)

      c.    *The record does not support the Attorney General's attempt to distinguish* Nazir

Islas Segura contends that, as in *Nazir, supra*, 79 Cal.App.5th 478, the trial court erroneously believed it was not permitted to consider Special Directive 20-08 in connection with the prosecutor's motion to dismiss. The facts in *Nazir* are remarkably similar to this case. Here, as in *Nazir*, the prosecutor moved to dismiss allegations against a defendant based solely on Special Directive 20-08. (*Id.* at pp. 487–488.) Moreover, the same trial judge who denied the prosecutor's motion in *Nazir* declined to consider the special directive and denied the prosecutor's motion in this case. (*Ibid.*)

The Attorney General does not contend *Nazir* was wrongly decided or we should not follow it. This is not surprising, as the Attorney General filed an amicus brief in *Nazir* supporting the petitioner and District Attorney Gascón. Nevertheless, the Attorney General asserts that—contrary to Islas Segura's characterization of the record—the trial court did consider Special Directive 20-08, but concluded it was not sufficient to warrant dismissal under the specific facts of this case. Therefore, the Attorney General argues, there is no need to remand the case for reconsideration.

13

The record does not support the Attorney General's assertion. In denying the People's motion, the court noted it is "well-settled that the court's discretion to dismiss under 1385 must be based on an individualized consideration of the circumstances of the offense and the defendant's background," and cannot "be based on disagreement with the law or antipathy with the sentencing scheme." As we have said, this was a correct statement of the law. The court also remarked that Special Directive 20-08 does not provide any facts or circumstances specific to this case, and it invited Islas Segura to make a renewed request based on factors "traditionally submitted to the court for dismissal under 1385." These remarks suggest the court believed it could not grant the prosecutor's motion to dismiss based on Special Directive 20-08 alone, which was a reasonable conclusion under the state of the law at the time. However, eighteen months later, the *Nazir* court held a trial court, in ruling on a motion to dismiss an enhancement, properly may consider a prosecutor's position that the deterrent effect or value to public safety of imposing a sentence enhancement is questionable. (*Nazir*, *supra*, 79 Cal.App.5th at p. 499.)

Our interpretation of the record finds further support in the fact that the same judge made very similar remarks in *Nazir,* which he decided within days of the ruling in this case. The motion to dismiss in *Nazir* and the prosecutor's motion in this case are identical in all relevant respects, and there is no apparent reason why the judge would have treated them differently. Although the judge made additional clarifying remarks in *Nazir*, given all the circumstances, we are sufficiently convinced he employed the same reasoning in both cases. Accordingly, the case must be remanded for the court to

14

reconsider the prosecutor's motion to dismiss, giving due consideration to Special Directive 20-08.

**2.**   ***There was no prosecutorial misconduct***

Islas Segura contends the prosecutor committed misconduct during closing argument by referring to a Christmas snow globe.

a.   *Background*

During closing argument, the prosecutor drew an analogy between the evidence in the record and a Christmas snow globe.[8] He explained that "what we say, the attorneys, it's not evidence. What you heard from that witness stand, the exhibits that you saw, that's the encapsulated snow globe of evidence in this case. And like a snow globe, it usually gives you a little bit because you can't fit everything into the snow globe, right?"  The prosecutor continued:  "So if you have Santa Claus and one reindeer, you don't need all of the reindeer in that snow globe to realize that it's a Christmas snow globe, right, even though it would, I guess, be nice.  You realize there are Dancer, Prancer, Donner, and Vixen—they're out there, but they're not in the snow globe. You don't need them.  There is always going to be extra evidence outside that globe, but you focus on what's in there and if that's enough to convict, that's what you go with.  And if it's not, you acquit."

b.   *Standard of review*

"When attacking the prosecutor's remarks to the jury, the defendant must show that, '[i]n the context of the whole argument and the instructions' [citation], there was 'a reasonable likelihood the jury understood or applied the complained-of

---

[8]    The record does not disclose whether the prosecutor used an actual snow globe during his closing argument.

15

comments in an improper or erroneous manner.  [Citations.]
In conducting this inquiry, we "do not lightly infer" that the
jury drew the most damaging rather than the least damaging
meaning from the prosecutor's statements.  [Citation.]' "
(*People v. Centeno* (2014) 60 Cal.4th 659, 667 (*Centeno*).)

     c.     *Islas Segura forfeited the issue*

We agree with the Attorney General that Islas Segura
forfeited the issue by failing to raise it below.  Absent a showing
that an objection or request for admonition would have been
futile or that the harm could not have been cured, an appellant
may not complain of prosecutorial misconduct unless he timely
objected to the alleged misconduct at trial and asked the court
to admonish the jury to disregard the impropriety.  (*People v. Hill*
(1998) 17 Cal.4th 800, 820; *People v. Morales* (2001) 25 Cal.4th
34, 43–44.)  Islas Segura did neither in this case.  Nor does
the record indicate an objection would have been futile or
that any harm could not have been cured with an admonition.
Accordingly, Islas Segura has forfeited the issue.  Nevertheless,
we will consider the merits of his arguments in order to forestall
his derivative ineffective assistance of counsel claim.

     d.     *Islas Segura has not shown the prosecutor engaged*
               *in misconduct*

Relying on *People v. Katzenberger* (2009) 178 Cal.App.4th
1260 and *Centeno, supra,* 60 Cal.4th 659, Islas Segura argues
the prosecutor's reference to a snow globe during closing
argument constituted misconduct.  In *Katzenberger,* the
prosecutor attempted to demonstrate the burden of proof
during closing argument by showing the jury a slide show of
an eight-piece puzzle of the Statue of Liberty.  The prosecutor
added pieces to the puzzle one-by-one, until six of the eight pieces

16

were visible.  (*Katzenberger*, at pp. 1264–1265.)  At that point, the prosecutor asserted, " '[w]e know [what] this picture is [the Statue of Liberty] beyond a reasonable doubt without looking at all the pieces of that picture.' "  (*Id.* at p. 1265.)  She then noted the jury's " 'standard is to judge this case beyond a reasonable doubt.' "  (*Ibid.*)

The Court of Appeal held the prosecutor's demonstration constituted misconduct.  (*People v. Katzenberger, supra,* 178 Cal.App.4th at p. 1268.)  The court explained the use of a puzzle that was almost immediately recognizable "leaves the distinct impression that the reasonable doubt standard may be met by a few pieces of evidence.  It invites the jury to guess or jump to a conclusion, a process completely at odds with the jury's serious task of assessing whether the prosecution has submitted proof beyond a reasonable doubt."  (*Id.* at pp. 1266–1267.)  The court also noted the prosecutor's argument improperly quantified the concept of reasonable doubt, suggesting it requires 75 percent certainty.  (*Id.* at pp. 1267–1268.)

In *Centeno, supra*, 60 Cal.4th 659, the prosecutor attempted to explain the burden of proof by showing the jurors a diagram containing a geographical outline of California.  (*Id.* at pp. 664, 665 & fn. 4.)  The prosecutor told the jury it had to decide what state was depicted in the diagram.  She then laid out "hypothetical 'testimony' " about the diagram, which was full of inconsistencies, omissions, and inaccuracies.  (*Id.* at p. 664.)  The prosecutor argued that, despite the flawed testimony, there was no reasonable doubt the state in the diagram was California.  (*Ibid.*)

Analogizing to *Katzenberger*, the California Supreme Court held the prosecutor's argument constituted misconduct.  The

17

high court explained the "use of an iconic image like the shape of California or the Statue of Liberty, unrelated to the facts of the case, is a flawed way to demonstrate the process of proving guilt beyond a reasonable doubt.  These types of images necessarily draw on the jurors' own knowledge rather than evidence presented at trial.  They are immediately recognizable and irrefutable.  Additionally, such demonstrations trivialize the deliberative process, essentially turning it into a game that encourages the jurors to guess or jump to a conclusion." (*Centeno, supra*, 60 Cal.4th at p. 669.)

Islas Segura argues the prosecutor's snow globe analogy in this case is comparable to the inappropriate demonstrations in *Katzenberger* and *Centeno.*  Specifically, he contends the prosecutor misstated the burden of proof and the jury's obligations by asserting " 'if you have Santa Claus and one reindeer, you don't need all of the reindeer in that snow globe to realize that it's a Christmas snow globe.' "  According to Islas Segura, this remark improperly suggested a quantitative measure of reasonable doubt and conveyed to the jury it could find him guilty based only on a " 'little bit' " of evidence.

We agree with Islas Segura that some of the prosecutor's remarks resemble those in *Katzenberger* and *Centeno*, especially when viewed in isolation.  As in those cases, the prosecutor used a relatively iconic image that was unrelated to the case, urged the jurors to rely on their outside knowledge to identify it, and suggested they could reach a conclusion about the image based on limited information.  Nevertheless, the prosecutor's snow globe analogy is sufficiently distinct from the arguments in *Katzenberger* and *Centeno* that it does not rise to the level of misconduct.

18

Contrary to Islas Segura's contentions, it is not self-evident the jurors would have understood the prosecutor's analogy to concern the burden of proof. In *Katzenberger* and *Centeno*, the prosecutors were explicit that the purpose of their analogies was to explain the concept of proof beyond a reasonable doubt, something the Supreme Court has described as a " 'perilous exercise.' " (*People v. Freeman* (1994) 8 Cal.4th 450, 503–504.) Here, in contrast, the prosecutor did not explicitly mention the burden of proof, use language from the relevant jury instruction, or ask the jurors to make factual findings about the snow globe. Instead, he simply noted the jurors could "realize" the snow globe was Christmas themed, a term not commonly associated with criminal trials. Although it is possible to construe his remark as concerning the burden of proof, given this context, it is not reasonably likely the jurors understood it in that way.

Instead, it is far more likely the jurors understood the analogy to convey a much simpler concept: that they should focus on the evidence presented at trial, without speculating about what other information might exist. Unlike the burden of proof, the prosecutor explicitly mentioned this idea while discussing the snow globe analogy. Indeed, he concluded his discussion of the analogy by stating, "[t]here is always going to be extra evidence outside that globe, but you focus on what's in there and if that's enough to convict, that's what you go with. And if it's not, you acquit." Describing this concept is far less perilous than describing the burden of proof.

We also reject Islas Segura's contention that the prosecutor's analogy likely misled the jurors about the nature of their factfinding obligations. In *Katzenberger* and *Centeno,* the prosecutors presented their demonstrations as being

19

generally analogous to a criminal trial.  In doing so, they wrongly implied the process to determine a defendant's guilt is akin to a simple game.  Here, in contrast, the prosecutor focused on one specific characteristic of the snow globe—its isolated and limited depiction of an event—which he then related to the trial.  By limiting the scope of his analogy in this way, it is unlikely the jury understood the prosecutor to be suggesting anything improper about the nature of the deliberative process.

  In closing, however, we remind counsel that such creative demonstrations as the use of a snow globe in a criminal trial can be fraught with peril.  It is far better to stick to the facts of the case and the jury instructions.

## DISPOSITION

We vacate Guillermo Islas Segura's sentence and otherwise affirm the judgment.  We remand the case for the trial court to resentence Isla Segura after reconsidering the People's motion to dismiss under section 1385 in accordance with this opinion. We remind the court that, when resentencing Islas Segura, it must impose a sentence on all counts and then stay execution of sentence as necessary under section 654.  (See *People v. Alford* (2010) 180 Cal.App.4th 1463, 1469.)

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

EGERTON, J.

We concur:

EDMON, P. J.

ADAMS, J.